IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CACEY COLLEEN COX, and HUNTER BROWN, | |
| Plaintiffs, | **8:22CV249** |
| vs. | |
| SHANNON EBEL, LIZ KURZ, and REBECCA HARLING, | **MEMORANDUM AND ORDER** |
| Defendants. | |

Plaintiffs Cacey Colleen Cox ("Cox") and Hunter Brown ("Brown") (collectively "Plaintiffs"), both non-prisoners, filed a pro se Complaint on July 11, 2022, Filing No. 1, which they first amended on September 14, 2022 (the "FAC"), Filing No. 10, and then amended again after leave was granted on September 15, 2022 (the "Second Amended Complaint" or "SAC"), Filing No. 13.  Plaintiffs were also given leave to proceed in forma pauperis.  Filing No. 8.  The Court now conducts an initial review of Plaintiffs' Complaint[1] to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e) and, for the reasons set forth below, finds that it is.

---

[1] For purposes of this initial review, the "Complaint" consists of Plaintiff's initial Complaint, Filing No. 1, the FAC, Filing No. 10, and the SAC, Filing No. 13.  *See* NECivR 15.1(b) (Court may consider pro se litigants' amended pleadings as supplemental, rather than as superseding, the original pleading).

# I. SUMMARY OF COMPLAINT

The subject matter of this case arises from the removal of Plaintiffs' children from their care,[2] and the alleged unconstitutional actions taken by the following three government officials in conjunction with the removal: Nebraska Department of Health and Human Services caseworkers Shannon Ebel and Liz Kurz, and Lincoln County prosecutor Rebecca Harling.[3]  Filing No. 13 at 1–3.

Specifically, Plaintiffs allege that two weeks after they refused to undergo drug testing via wearing a "drug patch," Ebel "had an order to remove their children" from Plaintiffs' care issued by the Juvenile Division of the County Court of Lincoln County, Nebraska on March 30, 2022, *see Id.* at 12, in violation of their due process rights.  *Id.* at 1, 3.  Plaintiffs assert that the explanation for the children's removal given by Ebel at the time—that she had "received reports from [C]olorado that were concerning from 2016 up until [M]arch 2022," and that a court case would probably take place because Plaintiffs refused to continue wearing a drug patch—was insufficient and violated their rights to due process.  Filing No. 10 at 1.

They allege that Kurz, at an unspecified time, also failed to provide a reason for their children's removal, did not provide family members an opportunity to foster their children, placed Plaintiffs on the central registry for child abuse and neglect before giving them an opportunity to defend themselves, submitted reports (presumably to the prosecution in support of the children's removal) that were false, based on hearsay, and

---

[2] See Filing No. 1 at 6.  Although the details of the removal set forth in the SAC and prior complaints are scant, it appears that two of Plaintiffs' children were removed from Plaintiffs' care on March 30, 2022, pursuant to an "Order of Temporary Custody" issued by the County Court of Lincoln County, Nebraska, and then were later removed pursuant to a plea agreement made on or after August 1, 2022.  Filing No. 10 at 1–3; Filing No. 13 at 3, 12.

[3] It is unclear from the Complaint if Plaintiffs sue the defendants in their individual or official capacities.

not investigated thoroughly, and gained access to their social media accounts, forbidding Plaintiffs from posting pictures of their children on social media.[4]  Filing No. 13 at 1–2.  It is unclear from the Complaints if the actions relating to Plaintiffs' claims against Kurz occurred after the March 30, 2022, removal or later.

Against defendant Harling, Plaintiffs allege that after the children had been temporarily removed from their care but prior to their "adjudication trial" which was set to take place on or around August 1, 2022, Harling contacted Plaintiffs' counsel and stated that if Plaintiffs did not agree to accept a plea agreement voluntarily removing the children from Plaintiffs' care, and instead contested the removal and proceeded to trial, Harling would proceed with an action to terminate Plaintiffs' parental rights permanently.  Filing No. 10 at 1–2; Filing No. 13 at 2.  Plaintiffs submit Harling's threat to proceed with termination of parental rights proceedings effectively forced them into taking a no contest plea under duress in order not to lose their children, agreeing to the children's more permanent placement in foster care (the "Plea").  Id.; Filing No. 13 at 2.  Plaintiffs also assert that the removal of their children was a retaliatory act by Harling and Ebel in response to Plaintiffs' refusal to wear a "drug patch" when none was ordered by the Nebraska court.  Filing No. 13 at 2–3.

Liberally construed, Plaintiffs allege the following claims: [5]

---

[4] The Court notes the timeline set forth in the SAC and prior complaints is difficult to follow.  It appears Plaintiffs' children were removed from their care initially under a temporary order in March of 2022, and then were later removed and placed into foster care on a more permanent basis via a plea agreement signed by Plaintiffs on or about August 1, 2022.  See Filing No. 10 at 1–3.

[5] In their initial Complaint, Filing No. 1, Plaintiffs allege federal question jurisdiction for what they contend was a violation of "constitutional tort rights = our rights to due process."  Id. at 3.  In the SAC they argue the same basis for their claims but do not specifically allege federal question jurisdiction.  Filing No. 13 at 1–3.  The Court construes their claims in the SAC as brought pursuant to federal question jurisdiction.

1.     Fourteenth Amendment due process claims against Ebel and Kurz for removing their children from their care without explanation or opportunity for family members to foster their children;

2.     A "Seventh and Fourteenth" Amendment claim against Harling for threatening to bring termination of parental rights proceedings if the Plaintiffs did not agree to removal of their children from their care;

3.     A Sixth Amendment claim and a substantive due process claim against Kurz for utilizing false information and hearsay evidence in her reporting, presumably in support of the removal of Plaintiffs' children from their care;

4.     A Fourth Amendment claim against Kurz of unreasonable search and seizure for accessing Plaintiffs' Facebook accounts and forbidding them from posting pictures of their children there;

5.     A First Amendment defamation claim against Kurz for slander and libel for placing Plaintiffs on the central child abuse registry prior to a child abuse determination being made;

6.     A First Amendment retaliatory prosecution claim against Ebel and Harling for seeking to remove Plaintiffs' children from Plaintiffs care due to their refusal to wear non-court ordered drug patches; and

7.     A claim that Ebel violated 18 U.S.C. § 242 of the United States Code.

Filing No. 13 at 1–3.

As relief Plaintiffs seek return of their children and $100,000 collectively from Defendants for emotional distress damages. *Id.* at 2.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color

of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). A § 1983 plaintiff must state *somewhere* in the complaint that the plaintiff "sues each and all defendants in both their individual and official capacities" otherwise it is presumed the claims are only official capacity claims. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir.1989) (emphasis added).

Here, Plaintiffs do not allege whether they sue Defendants in their official or individual capacities. *See* Filing Nos. 1, 10, & 13. While leave to amend a complaint is typically granted where plaintiffs wishing to sue § 1983 defendants in their individual capacity fail to "include unambiguous language noting that fact in their complaint," *see Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1050 (D. Minn. 2001), *amended*, No. CIV.00-CV-928ADM/RLE, 2001 WL 1488112 (D. Minn. Apr. 25, 2001), here, allowing Plaintiffs to amend to specify the capacity under which each Defendant is sued would be futile as Plaintiffs' remaining claims will not survive as official or individual capacity claims. As such, Plaintiffs' Complaint must be dismissed in its entirety for the reasons set forth below.

**A. Official Capacity Claims**

To the extent Plaintiffs' claims against Ebel, Kurz and Harling are brought in their official capacities, they are construed as claims against their respective public employers. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").

6

**1.** ***Harling***

Plaintiffs allege Harling is an employee of Lincoln County.  *See* Filing No. 13 at 2. Therefore, any official capacity claims against Harling are construed as claims against Lincoln County.  *See* Johnson, 172 F.3d at 535.

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of a plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8ᵗʰ Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Here, Plaintiffs do not allege any policy or custom of Lincoln County caused their injuries.  *See* Filing Nos. 1, 10, & 13.  As such, Plaintiffs have failed to allege a plausible claim for relief against Harling in her official capacity and any official capacity claim against Harling must be dismissed.

**2.** ***Ebel and Kurz***

Plaintiffs allege Kurz and Ebel are employed by the Nebraska Department of Health and Human Services.  *See* Filing No. 13 at 1.  "State officers sued in their official capacity . . . assume the identity of the government that employs them.  That is, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, and therefore is no different from a suit against the State itself."  *Norfleet By & Through Norfleet v. State of Ark. Dep't of Hum. Servs.*, 796 F. Supp. 1194, 1197 (E.D. Ark. 1992), *aff'd sub nom. Norfleet By & Through Norfleet v. Arkansas Dep't of Hum. Servs.*, 989 F.2d 289 (8th Cir. 1993) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989)) (internal quotations omitted).   Therefore, to the extent Plaintiffs sue Ebel and Kurz in their official capacity as caseworkers for the State of Nebraska, the suit is functionally against the State of Nebraska.

The Eleventh Amendment bars suit against a state "regardless of the relief sought, unless the state has waived its sovereign immunity or Congress has overridden it." *Norfleet*, 796 F. Supp at 1197.  As Congress did not override states' sovereign immunity when it enacted 42 U.S.C. § 1983, *see Will,* 491 U.S. at 66–67, and the State of Nebraska has not consented to be sued under section 1983, *see Anthony K. v. State*, 289 Neb. 523, 536 (2014) ("Nebraska has not waived its sovereign immunity with regard to § 1983 suits brought against it."), all Plaintiffs' claims against Kurz and Ebel in their official capacities for money damages are barred as a matter of law and must be dismissed.

**B.  Individual Capacity Claims**

Although Plaintiffs do not bring any claims against Defendants in their individual capacities, the Court reviews their claims to determine if any of them are potentially cognizable rendering leave to amend appropriate.  For the reasons explained below, amendment is futile.

### 1.  *Removal of children pursuant to court order*

Plaintiffs allege Ebel and Kurz violated their Fourteenth Amendment rights to due process for removing their children from their care without explanation or opportunity for family members to foster their children.  Filing No. 13 at 1, 3.  As discussed below, Plaintiffs' claim is precluded by the *Rooker-Feldman* doctrine and the doctrines of quasi-judicial and qualified immunity and therefore must be dismissed.

#### a.  **Rooker-Feldman**

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983),

8

because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (citation and internal quotations omitted). The *Rooker-Feldman* doctrine generally applies where a case is brought by a loser in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobile Corp. v. Saudia Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* is, however, a narrow doctrine that does not extend to a case merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Only where the alleged injury for which a plaintiff seeks redress stems directly from the state court judgment itself, *rather than from some separate injury caused by the defendant*, does the federal court have no jurisdiction to review. *Skit Intern., Ltd. v. DAC Techs. of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (emphasis added). Therefore, the crucial inquiry in determining if a claim is so inextricably intertwined with a state judgment that it cannot be heard by a federal court has been explained as hinging upon a determination of "whether the federal plaintiff seeks to set aside a state court judgment or whether he [or she] is, in fact, presenting an independent claim." *Brokaw*, 305 F.3d at 664-65 (citation omitted). Put another way, "if a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles

of preclusion." *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) (quoting *Exxon*, 544 U.S. at 293).

Here, only one of Plaintiffs' claims directly challenges either of the state court's decisions to remove their children from their care. Filing No. 13 at 2. To the extent the Plaintiffs' claim unconstitutional actions by the Defendants resulted in the state court orders removing the children from their home, such as their claims against Ebel and Harling for retaliation relating to their refusal to wear a drug patch, the claims against Kurz regarding placing them on the central registry for child abuse prior to any hearing or adjudication on the matter, creating reports based on false or inaccurate evidence in support of the decision to remove their children, and their claim against Harling of "forcing" them to enter into the plea agreement via threats of filing a termination of parental rights action if they did not agree, *Rooker-Feldman* does not apply as these claims are not a challenge to the state court's orders or judgments. However, Plaintiffs' assertion that Ebel and Kurz acted wrongfully when they enforced the state court's order and removed Plaintiffs' children from their care is barred by *Rooker-Feldman* as it directly challenges the substance of the removal order and Ebel's and Kurz's actions taken in reliance on it.

Challenges to the actions to enforce a state court judgment are considered a challenge to the judgment itself. *Dietrich v. City of Grosse Pointe Park*, No. 17-1387, 2017 WL 11645272, at *3 (6th Cir. Sept. 29, 2017) (citing *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006)). As Plaintiffs admit that the alleged injury, removal of the children without explanation, was done pursuant to an order,[6] their claim against Ebel and

---

[6] Aside from allegation that Plaintiff's children were removed from the Plaintiffs' care pursuant to an "order," Plaintiff's Complaint contains no facts as to the substance of the order, who issued the order, or what the order required Ebel or Kurz to do. As such, Plaintiffs also provide no basis for their argument that Ebel or Kurz were required to explain why the children were being removed from Plaintiffs' care.

Kurz for removal of the children pursuant to a court order is barred by *Rooker-Feldman* and must be dismissed.

### b. Immunities

Even if the claim were not subject to dismissal pursuant to *Rooker-Feldman* it is due to be dismissed as both Kurz and Ebel are immune from suit under both quasi-judicial immunity and their own qualified immunity as caseworkers involved in protection of children where abuse has been alleged.

#### i. Quasi-Judicial immunity

Government officials such as case workers have "quasi-judicial absolute immunity when they enforce a court order" for acts they are "required to do under court order or at a judge's direction." *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994) (quoting *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988). To the extent the order referenced is a court-issued order or judgment removing the children from Plaintiffs' care,[7] both Ebel and Kurtz are immune from suit under quasi-judicial immunity.

#### ii. Qualified immunity

Caseworkers are also protected from suit by their own qualified immunity "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005) (citing *Littrell v. Franklin,* 388 F.3d 578, 582 (8th Cir. 2004) ("'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'") (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992))). When reviewing the actions

---

[7] The Court notes, the only order specifically referenced by Plaintiffs in the Complaint is the March 30, 2022, removal order. However, the Plaintiffs also submit they entered into a plea agreement removing the children from their care sometime on or around August 1, 2022. *See* Filing No. 13 at 1–3; Filing No. 10.

of a governmental employee in light of qualified immunity, a reviewing court first asks "whether, taken in the light most favorable to the plaintiff, the facts alleged show the [government official's] conduct violated a constitutional right; and second, whether, in the specific context of the case, the right was clearly established." *Id.* (quoting *Swipies v. Kofka,* 348 F.3d 701, 703 (8th Cir. 2003)).

Courts in the Eighth Circuit have held that parents have a substantive due process right in the care and custody of their children that is limited by a state's "potentially conflicting, compelling interest in the safety and welfare of the children . . . particularly in circumstances where the protection is considered necessary as against the parents themselves." *Abdouch*, 426 F.3d at 987 (internal citations and quotations omitted). Stated another way, "[t]he parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children." *Lux by Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989) (citation omitted).

To determine if qualified immunity applies,

[i]n the light most favorable to the plaintiff, the Court must "first determine if the facts alleged show the officer's conduct violated a constitutional right; and second, whether, in the specific context of the case, the right was clearly established . . . . The net result of these competing interests is that we must weigh the interests of the state and child against those of the parents to determine whether a constitutional violation has occurred. Under this balancing test, the officials' actions must have been based on a reasonable suspicion of abuse and must not have been disproportionate under the circumstances.

*Abdouch*, 426 F.3d at 987 (internal quotation and citation omitted).

Here, although Plaintiffs argue that that Ebel and Kurz were relying solely on reporting from prior years regarding previous abuse and neglect of Plaintiffs' children that

12

were "already closed out and done with," Filing No. 13 at 1, a cursory review of the Second Amended Complaint and its attachments establish that Plaintiffs omit relevant factual assertions which are fatal to their claim.  The Court finds Ebel's and Kurz's removal of the children from Plaintiffs' care was not based solely on speculation or uncertainty but was instead founded in a reasonable suspicion of abuse.

Attached to the Second Amended Compliant is an extensive report detailing multiple abuse allegations spanning the course of years, including after the family moved to Nebraska, with some allegations occurring within weeks of the children's initial removal from Plaintiffs' care on March 30, 2022.  *See Id.* at 10–50.  Plaintiffs fail to address any of the additional claims in those reports relating to the voluntary case that was opened November 22, 2021, the allegations which caused it to be opened, or the culmination of events leading to the removal of their children from their care on March 30, 2022, as detailed in the attached reporting.  *See e.g. Id.* at 22 (discussing the children's lack of cleanliness, access to inappropriate videos of a sexual nature, individuals with criminal histories and substance abuse issues residing in the home with the children, THC being found in the children's system a few weeks prior to the children being removed from their care, school reports of concerning behavior, along with the "long history of abuse and a lack of cooperation in services offered" in their voluntary case).  A claim cannot stand when the allegations supporting a claim simply ignore contradictory factual details set forth in a written instrument attached to a complaint. *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874 (W.D. Mich. 2014) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 454 (7th Cir.1998) ("It is a well-settled rule that when a written

instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.")).

Based on the nature of the allegations in the reporting attached to the Second Amended Complaint and Plaintiffs wholesale failure to address any of the allegations made in those reports leading to the removal of their children, the Court finds no constitutional right was violated as any suspicions of abuse were reasonable. The subsequent action taken for the safety of the children outweighs Plaintiffs' right in the care and custody of their children. As such, Plaintiffs' claim against Ebel and Kurz must be dismissed as they are also immune under the doctrine of qualified immunity.

**2.  *Obtaining plea agreement via "threat" to seek termination of parental rights***

Plaintiffs sue Lincoln County prosecutor Harling for her role in the state court proceedings resulting in their children being placed in foster care. *See* Filing No. 13 at 2. Specifically, Plaintiffs conclude they were "forced into takeing [sic] a no contest plea in order to not lose [their] children . . . under duress" as Harling threatened to proceed with "termination of [their parental] rights" if Plaintiffs' did not accept the terms of the plea, allegedly violating their Seventh and Fourteenth Amendment rights. *Id.*

Prosecutors "are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (internal quotation marks and citation omitted). Negotiating plea agreements is a prosecutorial function. *Jordan v. Bell*, No. 4:21CV1242 HEA, 2022 WL 4245440, at *5 (E.D. Mo. Sept. 15, 2022) (explaining that "negotiation of plea offers are clearly an essential part of the prosecutorial function."). Moreover, "[b]ecause [prosecutorial] immunity depends upon the functional

14

nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection." *Id.* (internal quotation omitted) (quoting *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)).  Indeed, even allegations that a prosecutor presented false testimony or withheld evidence does not defeat prosecutorial immunity.  *See Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987) (overruled on other grounds); *see also Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir.1986) (holding that a prosecutor's alleged "use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity").

Here, regardless of Harling's motive, as negotiation of a plea agreement in lieu of proceeding with termination of parental rights proceedings is a prosecutorial function, Plaintiffs' claims against Harling must be dismissed as Harling is entitled to absolute immunity for her actions.

### 3. *Use of false reports or reports based on hearsay to obtain removal of children*

#### a. <u>Sixth Amendment</u>

Plaintiffs argue they were denied their Sixth Amendment right to "not be subjected to hearsay evidence against them" via Kurz "submitting reports that were not true and that were hearsay and not investigated thoroughly."  Filing No. 13 at 1–2.  That claim is wholly without merit, since the Sixth Amendment only applies to criminal proceedings, *see Sundbye v. Ogunleye*, 3 F. Supp. 2d 254, 262 (E.D.N.Y. 1998) (citing *United States v. Wade,* 388 U.S. 218, 227 (1967) (Sixth Amendment only attaches at the "critical stage" of a criminal proceeding), and Nebraska Juvenile Court proceedings are civil in nature, not criminal, *see In re Zoie H.*, 304 Neb. 868, 876, 937 N.W.2d 801, 807 (2020), and

Plaintiffs make no allegations they were criminally charged or the reports at issue were presented in a criminal proceeding.

Based on the documents provided by Plaintiffs, the removal proceedings took place in Juvenile Court.  *See e.g.* Filing No. 13 at 12 (referencing the Juvenile Docket in the Order for Temporary Custody).  Because the proceedings at issue are not criminal matters, Plaintiffs' Sixth Amendment violation claim against Kurz must be dismissed for failure to state a claim on which relief can be granted.

### b.  Absolute and Qualified Immunity for Child Welfare Caseworkers

To the extent Plaintiffs' intend to claim that Kurz violated their substantive due process right in the care and custody of their children by providing reports allegedly based on false or misleading information to support the government's removal proceedings, *see Id.* at 2 (arguing that she has a right to parent and to make decisions on her children's behalf and that she was denied due process),[8] that right is limited by the state's "potentially conflicting, compelling interest in the safety and welfare of the children . . . particularly in circumstances where the protection is considered necessary as against the parents themselves."  *Abdouch*, 426 F.3d at 986 (8th Cir. 2005) (internal quotations and citations omitted).

In supporting a child's welfare, social workers and other family service department workers have been held to be absolutely immune from liability when filing or initiating proceedings to protect abused or neglected children as their role is "functionally comparable to that of a prosecutor."  *Thompson v. SCAN Volunteer Servs., Inc.*, 85 F.3d

---

[8] While Plaintiffs' discussion of their liberty interest in parenting their children was made in relation to Ebel's removal of their children pursuant to a court order, *see* Filing No. 13 at 1, in an abundance of caution the Court addresses this issue in relation to their claim against Kurz.

1365, 1373 (8th Cir. 1996).   In addition to absolute immunity, individual government actors performing discretionary tasks are entitled to qualified immunity which, as discussed *supra*, "protects public officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Abdouch*, 426 F.3d at 987.  In the context of removal proceedings, qualified immunity may not apply where "credible evidence" supports claims that a caseworker fabricated or otherwise utilized improper testimony in a family court proceeding.  *Walker v. City of New York*, 63 F. Supp. 3d 301, 313 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 74 (2d Cir. 2015), (citing *Green ex rel. T.C. v. Mattingly,* 07–CV–1790, 2010 WL 3824119, at *9 (E.D.N.Y. Sept. 23, 2010) (Vitaliano, J.)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wit v. City of Lincoln, Nebraska*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) (citing *Iqbal*, 556 U.S. at 678).

Here, Plaintiffs conclude that some reports submitted by Kurz were based on hearsay or were otherwise false but wholly fail to allege a single example of the claimed falsehoods, nevertheless where and when the reports were submitted, if and/or how they were used in the removal proceedings, and how the use of these reports infringed upon Plaintiffs' right to the care and custody of their children.  Filing No. 13 at 1–2.  In other words, Plaintiffs simply conclude that Kurz's reports, made for an unstated reason and utilized in an unstated way, were based on undescribed false statements, without describing which reports and statements they are referring to, or how the reports and their use effected their allegedly infringed rights.  These conclusions come nowhere close to establishing a claim and there are no plausible allegations of malice or improper motive

17

in the record that might defeat Kurz' immunity. *See Lux*, 886 F.2d at 1067 (naming malice and improper motive as potentially defeating a qualified immunity claim).

As such, Plaintiffs' claim against Kurz relating to the false and misleading reports, to the extent Plaintiffs intended to bring a substantive due process claim, must be dismissed based on the doctrines of absolute immunity to the extent Plaintiffs' intended to challenge the use of the reports as initiating proceedings against them, and under qualified immunity as Plaintiffs supply no plausible factual allegations to support claims that Kurz had an improper motive leading to her fabricating or otherwise utilizing improper testimony in the family court proceedings.

### 4. *Expectation of Privacy in Social Media Accounts*

Plaintiffs allege Kurz violated their Fourth Amendment rights to be free from unreasonable search and seizure by accessing a Facebook group and Tik Tok account, "getting information off of them," and relaying that information to the state court, indicating amongst other things that Kurz was concerned about Plaintiffs posting pictures and videos of their children. Filing No. 13 at 2. Here, even if Plaintiffs had a subjective expectation of privacy in their Facebook or Tik Tok accounts, they cannot show that their expectation is legitimate.

In establishing a reasonable expectation of privacy under the Fourth Amendment, courts have found that "a person must show that she had a subjective expectation of privacy [in the place searched or the item seized] and must show a willingness of society to recognize that expectation as legitimate." *Chaney v. Fayette Cnty. Pub. Sch. Dist.*, 977 F. Supp. 2d 1308, 1315 (N.D. Ga. 2013) (quoting *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010)). "A person cannot claim to have a legitimate expectation of privacy

in information that he or she shares with others, such as a service provider or with the public through a social media profile." *Paisley Park Enterprises, Inc. v. Ziani*, No. 18-CV-2556 (DSD/TNL), 2018 WL 6567828, at *5 (D. Minn. Dec. 13, 2018) (citing *Smith v. Maryland*, 422 U.S. 739, 742 (1979)).  By example, the *Chaney* court explained there is no reasonable expectation of privacy where an individual voluntarily turns over pictures to Facebook friends, as in doing so he or she also chooses to share the picture with an additional audience of unknown size, likely comprised of people he or she did or do not know, subject to continuous expansion without their approval.  *Chaney*, 977 F. Supp. 2d at 1315 (quoting *Rehberg*, 611 F.3d 842)).

The information Plaintiffs' claim was unreasonably searched and seized is the same type of information the *Paisley Park* and *Chaney* courts addressed—photos and information contained in social media accounts—of which no reasonable expectation of privacy exists because of the nature of the media platforms used and the lack of individual control over dissemination of information shared.   As such, Plaintiffs' unreasonable search claim against Kurz must be dismissed.

### 5.  *Defamation - Slander and Libel*

Plaintiffs allege a First Amendment defamation claim of libel and slander against Kurz, alleging that placement of their names on the central registry for child abuse prior to affording them an opportunity to be heard on child abuse allegations defamed them, which this Court construes as a First Amendment violation.  Filing No. 13 at 1.  However, defamation claims such as libel and slander are not proper in a Section 1983 action, and instead belong in state court.  *See Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir. 1975); *Morey v. Independent School District,* 429 F.2d 428 (8th Cir.1970); *O'Brien*, No.

1:20-CV-00153-SEP, 2020 WL 7624839, at *4 (E.D. Mo. Dec. 22, 2020) ("Libel and slander are not actionable under 42 U.S.C. § 1983.").

Thus, Plaintiffs' libel and slander claim against Kurz is dismissed without prejudice to reassertion in state court.

### 6. *Retaliation/Retaliatory Prosecution*

Plaintiffs allege that Ebel and Kurz conspired to remove Plaintiffs' children from their care after Plaintiffs refused to wear a "drug patch" that they were not ordered by a court to wear, in violation of their First Amendment rights. Filing No. 13 at 2.

"To prevail on a First Amendment retaliation claim, a plaintiff must establish that he was engaged in protected expression and there was a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Committe v. Univ. of Nebraska Sys.*, No. 8:21CV257, 2022 WL 1785437, at *4 (D. Neb. June 1, 2022) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). The retaliatory motive, however, must be a 'but-for' cause of injury. *Id.* (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")). Moreover, "[i]n the case of a child protective investigation, other courts have found the existence of a reasonable basis for the filing of a petition in family court is sufficient to demonstrate that the government action would have been taken even in the absence of some retaliatory motive." *Walker v. City of New York*, 63 F. Supp. 3d 301, 318 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 74 (2d Cir. 2015) (citing *Graham v. City of New York*, 869 F.Supp.2d 337, 352 (E.D.N.Y.2012)).

20

With these concepts in mind, the Court liberally construes Plaintiffs' retaliation argument relating to their refusal to wear the "drug patch" as protected activity under the First Amendment based on the drug patch's use by the government for providing information about the Plaintiffs that they did not wish to provide.  Therefore, at this stage Plaintiffs must set forth facts establishing that the decision to prosecute Plaintiffs for child abuse and ultimately remove Plaintiffs' children from their care would not have occurred if Plaintiffs had never been asked and then refused to wear the drug patches.

This Court finds Plaintiffs' claim that their refusal to wear drug patches resulted in the removal of their children disingenuous at best.  Plaintiffs fail not only to address any of the allegations of child abuse made against them, but they also fail to explain why they contend their refusal to wear the drug patches was a central issue to their case.[9]  In fact, without going into detail, Plaintiffs provide a litany of reports and records made by Colorado and Nebraska governmental agencies up through the March 30, 2022 date of removal, detailing countless events which would objectively support removal of Plaintiffs' children from their care.  *See* Filing No. 13 at 10–50.

Therefore, Plaintiffs' claim of retaliation against Ebel and Harling relating to the drug patches must be dismissed as not only do the Plaintiffs fail to factually support their claim, but also as the material set forth in the attachments suggest that Plaintiffs' retaliation claims are themselves retaliatory and, consequently, frivolous and malicious.

---

[9] Plaintiffs simply allege they "have a right to refuse drug testing" especially after they had "already proved to the department when [they] first moved . . . to Nebraska when [they] had to wear the drug patches" that they were not using drugs as the drug patches would "come up clean."  Filing No. 13 at 1, 3.

**7.** *18 U.S.C. Section 242*

Plaintiffs allege Ebel violated Section 242 of Title 18 via removing their children from their care where there were "no grounds to remove [them]." Filing No. 13 at 1. However, Section 242 of Title 18 of the United States Code is a criminal statute, which does not provide a basis for a private cause of action and cannot give rise to an action for damages. *United States v. Wadena,* 152 F.3d 831, 846 (8th Cir. 1998) (citing *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir.1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242 . . . . These statutes do not give rise to a civil action for damages.").  As such, Plaintiffs' Section 242 claim against Ebel must be dismissed.

**IV. CONCLUSION**

In summary, Plaintiff's Complaint should be dismissed in its entirety because it fails to state a claim upon which relief may be granted and seeks relief from Defendants who are immune from such relief, rendering any amendments to the claims set forth in the Complaint as futile.

IT IS THEREFORE ORDERED that: The Complaint, Filing No. 1; Filing No. 10; Filing No. 13, is dismissed with prejudice with respect to Plaintiffs' federal law claims and without prejudice to any state law claims.  A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 8th day of February, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court